# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| HAROLD HAYES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 10-3058 |
| | ) | |
| ILLINOIS DEPARTMENT OF | ) | |
| CORRECTIONS, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>OPINION</u>

SUE E. MYERSCOUGH, U.S. District Judge:

This Court now considers Defendant Illinois Department of Corrections' (IDOC) Motion for Summary Judgment (d/e 38) and Plaintiff Harold Hayes' Motion for Partial Summary Judgment (d/e 37). While Hayes asserts an Family Medical Leave Act, 29 U.S.C. § 2612, *et seq.* (FMLA) interference claim and retaliation claim, IDOC is entitled to summary judgment on both claims.  Hayes cannot succeed on his FMLA interference claim because he did not comply with FMLA leave requirements and IDOC had an honest suspicion that Hayes used FMLA

1

leave for an unintended purpose.  As for Hayes' FMLA retaliation claim,
IDOC is entitled to summary judgment because Hayes has insufficient
evidence to establish a prima facie case.  Accordingly, IDOC's Motion
will be GRANTED and Hayes' Motion will be DENIED AS MOOT.

## FACTS

Hayes is employed by IDOC as a correctional officer at the
Jacksonville Correctional Center in Jacksonville, Illinois.  Due to
depression, panic attacks, and anxiety, Hayes has been under the care of
psychiatrist Narasimhulu R. Sarma, M.D. since February 1, 2001.  Dr.
Sarma completed a Family and Medical Leave Act Medical Certification
Form for Hayes on January 9, 2008.  Dr. Sarma updated the form on
March 11, 2008 and stated that Hayes may experience depression,
anxiety, etc. lasting as long as a month.  The certification was valid for 12
months.

On September 28, 2008, Hayes was arrested for battery and theft.
He was ordered to appear at the Morgan County Courthouse on October
28, 2008.  Hayes submitted an incident report to IDOC on September

29, 2008 informing IDOC about the arrest and the scheduled court appearance.  Several weeks later, Hayes' daughter—a paralegal who was frequently at the courthouse—told Hayes that he did not need to appear in court on October 28, 2008.

On October 22, 2008, Bruce Schrieber, one of Hayes' coworkers, entered a hallway at the Jacksonville Corrections Center and found Hayes slumped over in a chair.  Minutes later, Hayes allegedly yelled at other coworkers "You guys need to close the fucking door."  Hayes then slammed a door.  Mr. Schrieber approached Hayes and found Hayes reading a newspaper.  Seeing Mr. Schrieber, Hayes purportedly stated, "Schrieber you are fucking annoying, you are a creep."  Mr. Schrieber felt physically threatened by Hayes and reported the incident.

During the evening of October 27, 2008, and into the morning on October 28, 2008, Hayes suffered a panic attack.  At 12:05 a.m. on October 28 Hayes called IDOC and advised that he would be unable to work his scheduled shift of 7:00 a.m. to 3:00 p.m. that day.  While IDOC policy allowed employees to give as little as 1-hour notice before

the start of a shift that they would absent from work,  IDOC policy also stated that "[e]xcept for emergencies, request for time off must be requested at least 24 hours in advance."  See IDOC's Memorandum of Law in Support of Defendant's Motion for Summary Judgment (IDOC's "Memorandum") (d/e 38-1) at  Ex. 5 at "O. Attendance", ¶ 3 (d/e 38-3) (1-hour notice provision); Ex. 5 at "O. Attendance" (d/e 38-3), ¶ 6 (24-hour notice provision).

When Hayes called in sick on October 28, 2008, Lt. Steve Doolin noticed that Hayes, who had not previously requested the day off, was scheduled to be in court on October 28.  Lt. Doolin had no idea that Hayes had ever been certified for FMLA leave.  Accordingly, at 9:22 a.m. that day, Lt. Doolin sent an email to Warden Jennifer Ward informing her that Hayes' sickness coincided with Hayes' scheduled court appearance.

At about 8:00 or 8:30 a.m on October 28, 2008, Hayes left his home and walked to the Morgan County Courthouse to speak with an Assistant State's Attorney about his suspended driving license.  Hayes'

license had been suspended as a result of a 2005 DUI.  After appearing at the courthouse on October 28, 2008, Hayes' sister-in-law drove him to Springfield, IL where Hayes obtained medical treatment from Dr. Sarma. The treatment consisted of an evaluation, psychotherapy, and medication.  Hayes' afternoon appointment had been scheduled since June 3, 2008—almost 4 months prior to the onset of Hayes' October 28, 2008 symptoms.  See IDOC's Memorandum (d/e 38-1 at 4, ¶ 12).  While Dr. Sara verified that Hayes indeed obtained treatment on the afternoon of October 28, 2008, Dr. Sarma also stated that Hayes "did not come for an unscheduled emergency appointment."  See IDOC's Memorandum (d/e 38-5 at 23 (Sarma Dep. at 87, lines 18-20)).

Unbeknownst to Hayes, once Warden Ward was told about Hayes' October 28, 2008 sick call, she ordered Lt. Doolin to immediately investigate Hayes' absence.  On the afternoon of October 28, 2008, Lt. Doolin went to the Morgan County Courthouse and spoke to the Assistant State's Attorney who had met Hayes earlier that day.  The Assistant State's Attorney confirmed that Hayes had come to the

5

courthouse that day.  This fact was further corroborated by Lt. Doolin's interview that day with a court security officer and Lt. Doolin's review of the courthouse's video surveillance tapes.  Lt. Doolin submitted his findings to Warden Ward.

On October 31, 2008, Hayes completed a Notification of Absence with respect to his October 28, 2008 absence.  Hayes' Notification of Absence referenced the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq., in the completed form.  See IDOC's Memorandum (d/e 38-6 (Ex. 14)); Hayes' Response to Defendant's Motion for Summary Judgment (Hayes' "Response") (d/e 41) at 2 ("Undisputed Facts").

As a result of the October 22, 2008 incident, an Employee Review Referral was conducted on November 10, 2008, and a disciplinary hearing was scheduled for November 25, 2008.  Hayes was also referred for disciplinary action on November 12, 2008 because he called in sick on October 28, 2008.

A disciplinary hearing was held on November 12, 2008 to determine Hayes' punishment for the October 28, 2008 incident.  The

hearing officer determined that Hayes had called in sick on October 28, 2008 to address personal matters.  No evidence was presented to the contrary.  The hearing officer recommended a 1-day suspension.  See IDOC's Memorandum (d/e 38-6 (Ex. 16)).  Because of Hayes' record of 20+ past disciplinary actions, the Warden disagreed with the hearing officer's level of recommended discipline.  On November 18, 2008, Warden Ward requested a 15-day suspension in addition to having Hayes docked a day's pay for the October 28, 2009 absence.  Id.  Hayes was docked a day's pay.  However, Hayes never served any suspension related to his October 28, 2008 absence.  See IDOC's Memorandum (d/e 38-6 (Ex. 10)).  Warden Ward did not attempt to corroborate Hayes' October 28, 2008 absence by obtaining medical documentation.

On November 25, 2008, an Employee Review Board Hearing was held with respect to the October 22, 2008 threatening incident.  Due to Hayes' "extensive disciplinary history", the hearing officer recommended that Hayes be discharged for his October 22, 2008 misconduct.  See IDOC's Memorandum (d/e 38-6 (Ex. 18)).  On December 18, 2008,

Warden Ward concurred with the recommended discharge.  On January 7, 2009, Hayes was placed on suspension pending discharge.  See IDOC's Memorandum (d/e 38-6 (Ex. 19)).  IDOC discharged Hayes on January 16, 2009.  See IDOC's Memorandum at 8; Hayes' Response (d/e 41) at 2 ("Undisputed Facts").

Hayes appealed and his cause was heard during a May 14, 2009 hearing before the Illinois Civil Service Commission.  See IDOC's Memorandum (d/e 38-6 (Ex. 20)).  Without objection from Hayes' counsel, the charge related to the October 28, 2008 incident was withdrawn and the disciplinary hearing proceeded only as to the October 22, 2008 incident.  See IDOC's Memorandum at 8, ¶ 44; Ex. 20; Hayes' Response (d/e 41) at 2 ("Undisputed Facts").  On October 16, 2009, the Illinois Civil Service Commission found that charges related to the October 22, 2008 incident were proven in part.  The Illinois Civil Service Commission imposed a 90-day suspension in lieu of discharge.  See IDOC's Memorandum (d/e 38-6 (Ex. 22)); Hayes' Response (d/e 41) at 2 ("Undisputed Facts").

8

In January 2009, Warden Ward was terminated from her position at Jacksonville Correctional Center.  On April 23, 2010, her successor, Warden Joseph Yurkovich, issued a memorandum stating that all correctional officers interested in a 60-day temporary assignment as a Maintenance Craftsman should contact the Warden's office.  The memorandum explained that the position would be awarded based on applicants' seniority.  Warden Yurkovich reserved the right to review a successful applicant's performance once the applicant was hired.  Satisfaction of the Warden's expectations was necessary to keep the temporary Maintenance Craftsman position beyond the initial 60-day term.

Hayes applied for and obtained the temporary Maintenance Craftsman position.  However, his term was not extended beyond the initial 60-day term.

On September 15, 2010, openings for a permanent Maintenance Craftsman position were posted.  Jerry Maul and Bret Hamilton were chosen as permanent Maintenance Craftsman because they were the two

most senior applicants with A grades who bid on the permanent
Maintenance Craftsman position during the job posting period.  Hayes
applied for the permanent Maintenance Craftsman job, and like, Mr.
Maul and Mr. Hamilton, he too had an A grade.  Hayes, though, was less
senior than Mr. Maul or Mr. Hamilton.

On March 5, 2010, Hayes sued IDOC claiming that IDOC violated
his rights under the FMLA.  Hayes contends that IDOC interfered with
his FMLA rights by refusing to designate his October 28, 2008 absence as
FMLA leave and by docking him a day's pay for his absence.
Additionally, Hayes contends that IDOC retaliated against him for
exercising his FMLA rights by refusing to hire him for the permanent
Maintenance Craftsman position.  IDOC has moved for summary
judgment on Hayes' claims.  See Defendant's Motion for Summary
Judgment d/e 38.  Hayes filed a Response (d/e 41) to which IDOC filed a
Reply (d/e 42).  As the matter is fully briefed, this Court can rule.

## JURISDICTION & VENUE

This Court has subject matter jurisdiction because Hayes' FMLA

claims are based on federal statutes.  See 28 U.S.C. § 1331.  Personal

jurisdiction exists because IDOC's actions took place in Illinois.  See

World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)

(personal jurisdiction exists where a defendant "'purposefully avail[ed]

itself of the privilege of conducting activities'" in the forum state)

(quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).  Venue exists

because a substantial part of the events giving rise to Hayes' claims

occurred in this judicial district.  See 28 U.S.C. §1391(a)(2).

## STANDARD

Summary judgment is appropriate "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of

law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also,

Fed.R.Civ.P. 56(c).  A moving party must show that no reasonable fact-

finder could return a verdict for the non-moving party.  See Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 254 (1986); Gleason v. Mesirow Fin.,

Inc., 118 F.3d 1134, 1139 (7th Cir. 1997).  Facts must be viewed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn for the non-movant.  See Trentadue v. Redmon, 619 F.3d 648, 652 (7th Cir. 2010).

As the non-moving party, Hayes must present "evidence upon which the jury could find for [him]."  Anderson, 477 U.S. at 251; see also Smith v. Severn, 129 F.3d 419, 427 (7th Cir. 1997) ("[A] party will be successful in opposing summary judgment only when they present definite, competent evidence to rebut the motion.").  Furthermore, for purposes of summary judgment, a court can rely only on material statements of fact which are both admissible and supported by the record.  See Fed.R.Civ.P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); Davis v. Elec. Ins. Trs., 519 F.Supp.2d 834, 836 (N.D.Ill. 2007) (only admissible evidence may be considered at summary judgment).

## ANALYSIS

Under the FMLA, eligible employees are entitled to 12 weeks of unpaid leave during any 12-month period "[b]ecause of a serious health condition that makes the employee unable to perform the function of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Since the FMLA creates substantive rights for employees, employers must accommodate employees who attempt to exercise their FMLA rights and may not interfere with the exercise of such rights. See Diaz v. Fort Wayne Foundry Corp., No. 97–2003, 1997 WL 795712, at *2 (7th Cir. 1997). A plaintiff bringing suit under the FMLA must establish, by a preponderance of the evidence, that he is entitled to the benefit he claims. Id. at 3. In this case, IDOC docked Hayes 1 day of pay and ordered him to serve a 15-day suspension. Hayes asserts an interference claim based on these alleged harms. Additionally, Hayes asserts an FMLA retaliation claim based on IDOC's alleged refusal to extend the duration of a 60-day temporary position Hayes held and to select him for a permanent Maintenance Craftsman position for which he applied.

13

For purposes of summary judgment, IDOC does not contest that Hayes was eligible for, or covered by, the FMLA.  See IDOC's Memorandum at 12.  Rather, IDOC argues that Hayes was not entitled to FMLA leave on October 28, 2008; that Hayes provided insufficient notice of his intent to take FMLA leave; and that Hayes has not been denied any benefits to which he was entitled.  This Court will, first, analyze Hayes' FMLA interference claim and, second, analyze Hayes' FMLA retaliation claim.

1. **Defendant is entitled to summary judgment on Plaintiff's FMLA interference claim because Plaintiff did not comply with FMLA leave requirements and Defendant had an honest suspicion that Plaintiff used FMLA leave for an unintended purpose.**

The FMLA prohibits employers from interfering with, restraining, or denying the exercise of a right under the FMLA.  See 29 U.S.C. § 2615(a)(1); 29 C.F.R. § 825.220(a)(1).  To prove a claim for FMLA interference, a plaintiff must prove the following: (1) plaintiff was eligible for FMLA protection; (2) his employer was covered by the FMLA; (3) plaintiff was entitled to leave under the FMLA; (4) plaintiff provided sufficient notice of his intent to take FMLA leave; and (5) the employer

14

denied the employee FMLA benefits to which plaintiff was entitled.  See

Righi v. SMC Corp., 632 F.3d 404, 408 (7th Cir. 2011).  An employer

may defeat an FMLA interference claim by showing the employee used

FMLA leave for an unintended purpose.  See Vail v. Raybestos Prods.

Co., 533 F.3d 904, 909 (7th Cir. 2008).  This has been interpreted to

mean that an employer does not violate the FMLA if it refuses to

reinstate an employee based on an honest suspicion that the employee

abused his leave.  See id. at 909-10; Crouch v. Whirlpool Corp., 447 F.3d

984, 986-87 (7th Cir. 2006); Kariotis v. Navistar Int'l Transp. Corp., 131

F.3d 672, 681 (7th Cir. 1997).  By extension, IDOC's refusal to

compensate Hayes for his 1 day of docked pay would also be subject to

an honest suspension defense.

       For purposes of summary judgment, IDOC does not contest that

Hayes was eligible for FMLA protection or that IDOC was covered by the

FMLA.  Therefore, this Court's initial inquiry is whether Hayes was

entitled to FMLA leave.  Employees are required "to comply with an

employer's usual and customary notice and procedural requirements for

15

requesting leave." <u>See</u> 29 C.F.R. § 825.302(d).  When an employee fails to comply with such mandatory policies, he fails both to exercise FMLA rights and to provide sufficient notice of the intent to take leave and, therefore, cannot state a valid interference claim.  <u>See</u> <u>Brown v. Auto. Components Holdings, LLC</u>, 622 F.3d 685, 690 (7th Cir. 2010); <u>Gilliam v. United Parcel Serv., Inc.</u>, 233 F.3d 969, 972 (7th Cir. 2000).  In both <u>Brown</u> and <u>Gilliam</u>, employees were fired because they did not comply with ~~an~~ attendance policies.  In each case, the Seventh Circuit held that the employer did not interfere with the employee's FMLA rights by upholding the attendance policy, regardless of whether the reason for the absence would qualify for leave under the FMLA.  <u>See</u> <u>Brown</u>, 622 F.3d at 690; <u>Gilliam</u>, 233 F.3d at 971–72.

While IDOC policy allowed employees to give as little as 1-hour notice before the start of a shift that they would absent from work, IDOC policy also stated that "[e]xcept for emergencies, request for time off must be requested at least 24 hours in advance."  <u>Compare</u> IDOC's <u>Memorandum</u> (d/e 38-3) <u>Ex. 5</u> at "O. Attendance", ¶ 3 (1-hour notice

16

provision) with ¶ 6 (requirement that 24-hour notice be given in cases other than emergencies).  By calling in sick at 12:05 a.m. on October 28, 2008, Hayes gave IDOC more than 1-hour notice that he would be absent for his 7 a.m. to 3 p.m. shift that day due to his panic attack.

Moreover, Hayes did indeed get medical treatment on October 28, 2008 since he saw Dr. Sarma that afternoon for an office visit.  However, that medical appointment had been scheduled since June 3, 2008—some 4 months prior to Hayes calling in sick.  See IDOC's Memorandum (d/e 38-3 at 4, ¶ 12).  Given that the appointment had been scheduled so far in advance of Hayes' panic attack, and Hayes never cancelled or rescheduled the appointment, the record shows that Hayes intended to be at the appointment.  In fact, as to the October 28, 2008 medical appointment, Hayes' doctor stated that Hayes "did not come for an unscheduled emergency appointment."  See IDOC's Memorandum (d/e 38-5 at 23 (Sarma Dep. at 87, lines 18-20)).  Thus, the onset of Hayes' panic attack merely coincided with his longstanding doctor's appointment scheduled for that day.  As such, the doctor's appointment

which Hayes attended on October 28, 2008 was not an emergency such that IDOC's 24-hour advance notice requirement should be excused.

Hayes argues that IDOC did not consistently enforce its 24-hour advance notice requirement and, therefore, IDOC cannot validly assert the 24-hour requirement as grounds for disapproving Hayes' October 28, 2008 absence. To this end, Hayes proffers numerous requests for FMLA leave that IDOC approved despite his failure to give 24-hours notice of absence. Since IDOC policy allowed employees to take leave with less than 24-hrs notice so long as there was an emergency, and there is no indication that Hayes' prior instances of approved leave were not emergency in nature, the proffered absence forms do not show that IDOC inconsistently applied its 24-hour advance notice policy.

Furthermore, the absence forms are hearsay under Federal Rule of Evidence 801(c) because they are offered to prove the truth of the matter asserted—*i.e.* that IDOC approved Hayes' non-emergency absences despite receiving less than 24-hours advance notice. See id. ("Hearsay" is a statement, other than one made by the declarant while testifying at the

18

trial or hearing, offered as evidence to prove the truth of the matter asserted.").  "[H]earsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial." Eisenstadt v. Centel Corp., 113 F.3d 738, 742 (7th Cir.1997) (citations omitted).  Since no foundation has been laid for the forms, and no exception to the hearsay rule has been argued, the forms are inadmissible.

Because the evidence shows that Hayes' October 28, 2008 absence did not comply with IDOC's usual and customary notice and procedural requirements for non-emergency leave, and Hayes has not produced evidence raising a genuine issue of material fact concerning IDOC's application of its leave policy, Hayes' FMLA interference claim cannot survive summary judgment.  See Brown, 622 F.3d at 690; Gilliam, 233 F.3d at 971-72; 29 C.F.R. § 825.302(d); see also, Lewis v. Holsum of Fort Wayne, Inc., 278 F.3d 706, 709-10 (7th Cir. 2002) (employer's rule requiring employees to call employer within 1 hour of shift's start if employer is going to be absent is a "usual and customary" condition precedent to taking FMLA leave).

Even if this were not so, Hayes' FMLA interference claim does not withstand IDOC's honest suspicion defense.  In <u>Kariotis</u>, the Seventh Circuit held that an employer who honestly believes that it is firing an employee for misusing FMLA leave is not liable for violating the FMLA if the employer was mistaken in its belief.  There, the employer refused to reinstate a plaintiff to her former position because the employer thought the employee had extended her FMLA leave for fraudulent reasons.  The plaintiff had extended her FMLA leave following surgery for post-operative procedures.  While plaintiff's doctor confirmed that plaintiff needed the post-operative procedures, the employer hired a private investigator to watch plaintiff.  Based the investigator's videotaped observations of plaintiff—which showed plaintiff walking, driving and shopping—the employer decided that plaintiff had extended her medical leave unnecessarily.  For this reason, the employer terminated plaintiff. The Seventh Circuit held that the employer's "honest suspicion" that the employee was misusing her FMLA leave was sufficient to discharge the plaintiff.  <u>See</u> <u>Kariotis</u>, 131 F.3d at 681.

20

Similarly, in <u>Vail</u>, an employer similarly invoked the honest suspicion defense to obtain summary judgment on an employee's FMLA interference claim.  The employer suspected its employee of using  FMLA leave to assist her husband with his lawn-mowing business instead of attending to her purported migraine headaches.  The employee repeatedly asked for leave during warm weather months in peak lawn-mowing hours.  The employer fired the employee after it surveilled her mowing lawns while on FMLA leave.  The employee sued the employer for interfering with her FMLA rights and she lost on summary judgment due to the employer's honest suspicion that the employee was using FMLA leave for an unintended purpose.  <u>See</u> <u>Vail</u>, 533 F.3d at 906-07. The Seventh Circuit affirmed based on the employer's honest suspicion defense.  <u>See</u> <u>id.</u> at 533 F.3d at 909-10.

Here, IDOC docked Hayes 1 day of pay for his October 28, 2008 absence and ordered him to serve a 15-day suspension.  Since Hayes admitted that he never served a suspension related to the October 28, 2008 incident, he suffered no harm and can recover no damages in that

regard.  See Righi, 632 F.3d at 408 (among other things, an employee

must prove that his employer denied him an FMLA benefit to which he

was entitled); Burnett v. LFW, Inc., 472 F.3d 471, 477 (7th Cir. 2006)

("To succeed on an FMLA interference claim, [an employee] must

demonstrate that [the employer] deprived [the employee] of an FMLA

entitlement.").[1]

    As for the 1 day of docked pay, the evidence demonstrates that

IDOC docked Hayes' pay because it believed Hayes misused his FMLA

leave on October 28, 2008.  Given the video evidence of Hayes'

appearance at the Morgan County courthouse on the day he called in

sick, the fact that he appeared there on personal business unrelated to

any medical condition, and multiple witness corroborations as to Hayes'

presence and purpose at the courthouse, IDOC's evidence is nearly

identical to that in Kariotis.  Therefore, as in Kariotis, discipline was

---

[1]  Hayes also complains that IDOC should have allowed him to substitute a
day of paid leave in lieu of the unpaid leave he was given for his October 28, 2008
absence.  While the FMLA requires employers to give employees medical leave,
nothing in the FMLA requires employers to give employees paid medical leave.
Therefore, even if IDOC permitted employees to substitute paid leave for unpaid
leave, IDOC's permissive policy does not create an FMLA entitlement upon which
Hayes can sue.

appropriate based on IDOC's honest suspicion that Hayes was abusing FMLA leave.

While Hayes cites the doctor's note he gave IDOC after his absence to verify that he indeed received medical treatment on October 28, 2008, that note does not cast doubt on the legitimacy of IDOC's well-founded belief that Hayes was not entitled to FMLA leave.  Such a note was similarly provided in <u>Kariotis</u>, yet it did not detract from the employer's honest suspicion that the employee used FMLA leave for an unintended purpose.  <u>Id.</u> at 681.  For this, as well as the additional reasons stated above, IDOC is entitled to summary judgment on Hayes' FMLA interference claim.

**2.    Defendant is entitled to summary judgment on Plaintiff's FMLA retaliation claim because Plaintiff has not established a prima facie case.**

Employees who allege that their employer retaliated against them for exercising rights under the FMLA can proceed under the direct or indirect methods of proof familiar commonly used in employment discrimination case.  <u>See</u> <u>Daugherty v. Wabash Ctr., Inc.</u>, 577 F.3d 747,

751 (7th Cir. 2009).  Under the indirect method, a plaintiff "must

demonstrate: (1) he engaged in statutorily protected activity; (2) he met

his employer's legitimate expectations; (3) he suffered an adverse

employment action; and (4) he was treated less favorably than similarly

situated employees who did not engage in statutorily protected activity."

See Cracco v. Vitran Exp., Inc., 559 F.3d 625, 634-35 (7th Cir. 2009).

Hayes has not presented any comparator as evidence to support his

FMLA claim.  Therefore, Hayes must proceed under the direct method.

See Burnett v. LFW Inc., 472 F.3d 471, 482 (7th Cir. 2006) (if a plaintiff

does not identify a similarly-situated employee whom the defendant

treated more favorably, plaintiff must proceed under the direct method).

Under the direct method, Hayes can survive summary judgment by

"creating a triable issue of whether the adverse employment action of

which [he] complains had a discriminatory motivation.  Rudin v. Lincoln

Land Cmty. Coll., 420 F.3d 712, 721 (7th Cir. 2005).  To prevail under

the direct method, Hayes must construct "a convincing mosaic of

circumstantial evidence that allows a jury to infer intentional

discrimination by the decisionmaker." <u>Ridings v. Riverside Med. Ctr.</u>, 537 F.3d 755, 771 (7th Cir. 2008)); <u>see also</u> <u>Cracco</u>, 559 F.3d at 633 (same).  "The 'convincing mosaic' standard is simply shorthand for the requirement that [a plaintiff] must present circumstantial evidence that, when considered together, would permit a jury to believe that the defendants retaliated against [him] for exercising [his] FMLA rights." <u>Cole v. Illinois</u>, 562 F.3d 812, 815, n. 2 (7th Cir. 2009).

The only evidence Hayes offers to support his retaliation claim is IDOC's alleged pretext for deciding not to promote Hayes.  <u>See</u> <u>Response</u> (d/e 41) at 27.  While pretext is relevant and necessary to an indirect evidence claim, it is inapplicable to a direct evidence claim.  <u>Compare</u> <u>Cracco</u>, 559 F.3d at 634-35 (identifying elements of an indirect evidence claim) <u>with</u> <u>Burnett</u>, 472 F.3d at 482 (identifying elements of a direct evidence claim).

Even if this Court were to construe Hayes' pretext evidence as an effort to establish direct evidence of FMLA retaliation, the evidence would fall short of the "convincing mosaic" necessary to survive

judgment.  The evidence in question concerns IDOC's decision not to promote Hayes to the permanent Maintenance Craftsman position because the successful job applicants, Jerry Maul and Bret Hamilton, had greater seniority.  Hayes asserts that IDOC's proffered reason for not promoting him to the permanent Maintenance Craftsman position should be disbelieved because an IDOC human resources employee, Earlene Castleberry, purportedly gave a different explanation for IDOC's decision not to promote him.  Hayes' reliance on Earlene Castleberry's deposition is problematic in several respects.

As an initial matter, Earlene Castleberry's deposition testimony is inadmissible hearsay.  Earlene Castleberry stated, and Hayes' counsel acknowledged, that her testimony was not based on any firsthand knowledge.  The exchange between counsel and Earlene Castleberry which preceded Earlene Castleberry's testimony about the temporary position's expiration demonstrates this:

Q.    Okay.  Do you know whether or not the union and
        management discussed allowing Harold [Hayes] to stay
        in the [temporary] position beyond 60 days?

26

A.    Only second hand information.

Q.    It's a discovery deposition, so we get to go there.  So
      what is your secondhand information?

                              * * *

Q.    Okay.  What you heard was that it was mutually agreed
      upon based on the quality of Harold's work in the
      temporarily assigned position?

A.    Yes.

See Memorandum at Ex. 25 (Castleberry Dep. at pp. 58-59).

Because Earlene Castleberry's information was all "secondhand

information"—based on things she heard others say about why Hayes

was not allowed to stay in a temporary position—her testimony is

hearsay under Federal Rule of Evidence 801(c).  Id.  As noted earlier in

this opinion, "hearsay is inadmissible in summary judgment proceedings

to the same extent that it is inadmissible in a trial."  See Eisenstadt, 113

F.3d at 742.  Therefore, Hayes' cannot rely on Earlene Castleberry's

testimony as a means to withstand summary judgment.

Even if that were not so, Earlene Castleberry's deposition testimony

does not demonstrate any inconsistency with IDOC's proffered reason

27

for not promoting Hayes to the permanent Maintenance Craftsman

position.  See Rudin v. Land of Lincoln Community College, 420 F.3d

712, 725 (7th Cir. 2005) (stating that "one can reasonably infer pretext

from an employer's shifting or inconsistent explanations for the

challenged employment decision.").  In her deposition, Earlene

Castleberry stated that Hayes was given a temporary assignment as a

Maintenance Craftsman and that temporary assignment was for a 60-day

duration unless union officials and IDOC management agreed to extend

the duration.  Because the union and IDOC management did not agree

to extend the duration, the temporary position expired.  See

Memorandum at Ex. 25 (Castleberry Dep.), pp. 57-60.  Accordingly, Ms.

Castleberry's testimony merely explains why Hayes' temporary position

expired.

     Hayes' loss of the temporary position is immaterial to why he was

not chosen for the permanent Maintenance Craftsman position.  It is the

permanent position that is at issue here and IDOC's proffered reason for

not promoting Hayes to the permanent position is that Hayes was less

28

senior than the successful applicants, Jerry Maul and Bret Hamilton. IDOC's proffered reason is not contradicted by Earlene Castleberry's testimony or otherwise disputed by Hayes. Consequently, IDOC is entitled to summary judgment on Hayes' FMLA retaliation claim.

## CONCLUSION

THEREFORE, Defendant's Motion for Summary Judgment (d/e 38) is GRANTED. Plaintiff's Motion for Partial Summary Judgment (d/e 37) is DENIED AS MOOT. This case is DISMISSED WITH PREJUDICE and the matter is CLOSED.

IT IS SO ORDERED.

ENTERED: October 14, 2011

FOR THE COURT:                    s/ Sue E. Myerscough
                                  SUE E. MYERSCOUGH
                                  UNITED STATES DISTRICT JUDGE

29